# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

*In re* FOWLER ESTATE
*In re* FOWLER TRUST

Docket Nos. 167501, 167502, and 167503. Argued on application for leave to appeal November 6, 2025. Decided July 20, 2026.

At issue in these consolidated appeals is whether life insurance proceeds and 401(k) proceeds paid into a revocable trust after the settlor's death are subject to creditor claims under MCL 700.7506(1)(b) and MCL 700.7605(1) of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. In 2018, Jennifer Fowler killed her mother, Helen Fowler, and herself. Julie Brooks, as personal representative of Helen's estate, filed a wrongful-death suit against Jennifer's estate, and the trial court awarded judgment in favor of Helen's estate, which sought to collect the judgment from Jennifer's estate in the St. Clair Probate Court. Shellie Spacil, as trustee of Jennifer's revocable trust—which was the named beneficiary for Jennifer's 401(k) account and life insurance policy—filed suit in the probate court, seeking a declaratory judgment regarding whether the 401(k) and life insurance proceeds could be used to satisfy the wrongful-death judgment. The probate court, John D. Tomlinson, J., held that the life insurance proceeds were subject to creditor claims under MCL 700.7605(1) and were not exempt either under MCL 700.7605(4) or under MCL 500.2207(2) of the Insurance Code, but that the 401(k) proceeds were exempt under MCL 700.7605(2).

Both parties appealed, and the Court of Appeals, JANSEN, P.J., and REDFORD and D. H. SAWYER, JJ., affirmed with respect to the life insurance proceeds but reversed with respect to the 401(k) proceeds, holding that the exemptions from creditor claims set forth in MCL 700.7605(2) and (4) and MCL 500.2207(2) did not apply. ___ Mich App ___ (July 18, 2024) (Docket Nos. 365600, 365603, and 365610). Jennifer's trust sought leave to appeal in the Supreme Court, which ordered oral argument on the application. ___ Mich ___; 18 NW3d 286 (2025). After oral argument, the Supreme Court ordered the parties to file supplemental briefs addressing, in part, "whether MCL 700.7605(1) applies to property paid into an irrevocable trust where the trust was revocable at the settlor's death." ___ Mich ___; 30 NW3d 616 (2026).

In a unanimous opinion by Justice THOMAS, the Supreme Court, in lieu of granting leave to appeal, *held*:

The assets of a trust—including assets payable to the trust upon the death of the settlor—are, barring applicability of an exception stated in MCL 700.7605(2) through (4), subject to the claims of creditors under MCL 700.7605(1) where the trust was established as a revocable trust but was rendered irrevocable by the death of the settlor. Therefore, all the property held and proceeds received by Jennifer's trust were generally subject to creditor claims that could not be satisfied by her estate. However, the 401(k) proceeds were exempt from creditor claims as a payment from a qualifying retirement plan under MCL 700.7605(2), and the life insurance proceeds were exempt under MCL 700.7605(4) because the proceeds would not have been subject to creditor claims if paid "other than to the settlor's estate."

1. Notwithstanding that a single-settlor revocable trust becomes irrevocable upon the settlor's death, the assets of Jennifer's trust, including proceeds paid into the trust following her death, were subject to creditor claims as property of a revocable trust under MCL 700.7506(1)(b) and MCL 700.7605(1). MCL 700.7506(1)(b) provides, in part, that after the death of a settlor, the property of a trust that at the settlor's death was revocable by the settlor is subject to expenses, claims, and allowances as provided in MCL 700.7605. In turn, under MCL 700.7605(1)(b), the property of a trust over which the settlor has the right, at his or her death, to revoke the trust is subject to creditor claims. The text of the statutes, relevant commentary, and underlying law showed that the Legislature's purpose in enacting MCL 700.7506(1)(b) and MCL 700.7605(1) was to codify the liability of a revocable trust used as a will substitute for the debts of a deceased settlor. Accordingly, the text of the statutes relies on a trust's status as a "revocable trust" at the time of the decedent's death. Because Jennifer's trust was revocable until her death, all the property held or proceeds received by the trust were subject to creditor claims, subject to the exceptions stated in MCL 700.7605(2) through (4).

2. Under MCL 700.7605(2), "all payments from . . . [a 401(k) plan] . . . shall not be considered to be a trust described in" MCL 700.7605(1). The disbursement of funds in the 401(k) plan to Jennifer's trust was a "payment[] from" a 401(k) plan. Reading MCL 700.7605(1) and (2) together, the intent of the Legislature was to treat "all payments from" a 401(k) plan as not part of a revocable trust liable for creditor and other claims. Because MCL 700.7605(2)'s exemption from MCL 700.7605(1) declares that "all payments from" a 401(k) plan "shall not be considered to be a trust described in" MCL 700.7605(1), the Legislature exempted such payments from the claims of creditors of a deceased settlor. Accordingly, the disbursement from Jennifer's 401(k) plan to her revocable trust was necessarily one of those payments exempt from creditor claims.

3. MCL 700.7605(4) provides that certain property shall not be considered trust property available for the payment of a claim against the settlor's estate under MCL 700.7605(1), including property "held or received by a trust" that would not have been subject to such claims "if it had been paid . . . other than to the settlor's estate." MCL 500.2207(2) places life insurance proceeds outside the reach of an insured-decedent's creditors unless the proceeds are paid to their estate (i.e., to "the insured" or their "executors or administrators"). The life insurance proceeds payable to Jennifer's trust therefore fell within MCL 700.7605(4)'s exemption for trust proceeds that would be outside the reach of creditors if "paid . . . other than to the settlor's estate." The Supreme Court rejected the argument of Helen's estate that, because a trust is administered, the trustee of a trust was necessarily an "administrator" within the meaning of MCL 500.2207(2). While MCL 500.2207(2) uses the antiquated terms "executors or administrators," the Legislature in EPIC has

supplanted these terms with unified use of the term "personal representative," which encompasses all those performing the same function as an executor or administrator "other than a trustee of a trust." A trustee, therefore, was not excluded as a protected beneficiary under MCL 500.2207(2), and the Court of Appeals and probate court erred by concluding that a trustee was akin to an executor or administrator.

Court of Appeals judgment reversed; case remanded to the probate court for further proceedings.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED  July 20, 2026

STATE OF MICHIGAN

SUPREME COURT

*In re* ESTATE OF JENNIFER L. FOWLER.

SHELLIE SPACIL, Personal Representative
of the ESTATE OF JENNIFER L.
FOWLER,

      Appellant,

v                              No. 167501

JULIE BROOKS, Personal Representative of
the ESTATE OF HELEN FOWLER,

      Appellee.

*In re* JENNIFER L. FOWLER TRUST.

SHELLIE SPACIL, Trustee of the
JENNIFER L. FOWLER TRUST,

      Appellant,

JULIE BROOKS, Personal Representative of
the ESTATE OF HELEN FOWLER,

        Appellee.

---

BEFORE THE ENTIRE BENCH

THOMAS, J.

This case concerns the liability of a decedent-settlor's revocable trust for claims against the decedent's insolvent estate. First, we consider the threshold question of whether the assets of a trust are subject to the claims of creditors under MCL 700.7506(1)(b) and MCL 700.7605(1) where the trust was established as a revocable trust but was rendered irrevocable by the death of the settlor. We conclude that the trust is liable to creditors because the text of MCL 700.7506(1)(b) and MCL 700.7605(1) requires courts to look to the power the decedent had over the trust at the decedent's death.

Next, we consider whether the trust assets at issue in this case, 401(k) and life insurance proceeds, are exempt from creditor reach under MCL 700.7605(2) or (4). We hold that the proceeds from both accounts are exempt. The 401(k) proceeds are beyond the reach of creditors because they are exempt from MCL 700.7605(1) as a "payment[] from . . . a retirement . . . plan that is qualified under section 401 of the internal revenue code" under MCL 700.7605(2). The life insurance proceeds are also beyond the reach of creditors because they "would not have been subject to a claim against the settlor's estate if [they] had been paid . . . other than to the settlor's estate" as exempted by MCL 700.7605(4). See also MCL 500.2207(2). Accordingly, we reverse the judgment of our

Court of Appeals and remand to the probate court for further proceedings consistent with this opinion.

## I.  FACTS & PROCEDURAL HISTORY

This case stems from an earlier wrongful-death action filed against Jennifer Fowler's estate in circuit court.  Jennifer was the patient advocate for her mother, Helen Fowler, who was 79 years old and lived at an assisted living home due to her dementia.  On November 10, 2018, Jennifer took Helen from the assisted living facility to Jennifer's home, where she killed both Helen and herself.  Julie Brooks, one of Helen's surviving daughters, filed a wrongful-death suit against Jennifer's estate in her capacity as personal representative of Helen's estate.  Jennifer's estate was found liable, and the circuit court awarded judgment in favor of Helen's estate.

Subsequently, Helen's estate sought to collect the judgment from Jennifer's estate. The personal representative of Jennifer's estate, Shellie Spacil, indicated that the estate could not satisfy the judgment because its assets had been exhausted by Jennifer's funeral expenses and defending against the wrongful-death suit.  But Jennifer had also created a revocable living trust to hold various assets during her life and to distribute the assets upon her death.  Relevant here, the trust is the named beneficiary for Jennifer's 401(k) account and life insurance policy.

Spacil, as trustee of Jennifer's trust, filed suit, seeking a declaratory judgment to determine whether the 401(k) and life insurance proceeds can be reached by Helen's estate as a judgment creditor.  The trust argues that neither the 401(k) proceeds nor the life insurance proceeds can be used to satisfy the judgment.  Helen's estate takes the opposite

position, arguing that the proceeds from each account are subject to creditor claims. The probate court applied MCL 700.7605(1), holding that the life insurance proceeds were subject to creditor claims but that the 401(k) proceeds were exempt under MCL 700.7605(2). Both parties appealed to our Court of Appeals. In a published per curiam opinion, the Court of Appeals affirmed the judgment of the probate court with respect to the life insurance proceeds but reversed with respect to the 401(k) proceeds. *In re Fowler Estate*, ___ Mich App ___; ___ NW3d ___ (July 18, 2024) (Docket Nos. 365600, 365603, and 365610). In other words, the Court of Appeals determined that proceeds from both accounts may be used to satisfy the judgment in favor of Helen's estate.

Jennifer's trust then sought leave to appeal in this Court as to both issues. We ordered oral argument on the application and directed the parties to address whether

> (1) the 401(k) account funds at issue are exempt from attachment by the Estate of Helen Fowler (Helen's Estate); and (2) the life insurance proceeds at issue are subject to the claims by Helen's Estate to the extent that the Estate of Jennifer L. Fowler lacks sufficient assets to satisfy the claims. [*In re Fowler Estate*, ___ Mich ___, ___; 18 NW3d 286, 286 (2025).]

This Court heard oral arguments on November 6, 2025. Subsequently, we ordered the parties to file supplemental briefing addressing, as relevant here, "whether MCL 700.7605(1) applies to property paid into an irrevocable trust where the trust was revocable at the settlor's death." *In re Fowler Estate*, ___ Mich ___, ___; 30 NW3d 616, 617 (2026).[1]

---

[1] We also directed the parties to address "whether the property at issue, the 401(k) and life insurance proceeds, became property of Jennifer's trust after the trust automatically became irrevocable upon her death; . . . [and] if MCL 700.7605(1) does not apply to the property at issue because the proceeds were paid into Jennifer's trust after it became irrevocable, whether the proceeds are analyzed under provisions related to irrevocable trusts, see MCL 700.7506(1)(c)." *In re Fowler Estate*, ___ Mich at ___; 30 NW3d at 617.

4

## II.  STANDARD OF REVIEW

The issues presented in this case are primarily questions of statutory interpretation. The proper interpretation of a statute is a question of law, which we review de novo. *People v Butka*, 514 Mich 366, 376; 22 NW3d 429 (2024).  Factual findings, to the extent that they are at issue, are reviewed for clear error. *In re Sizick Estate*, ___ Mich ___, ___; ___ NW3d ___ (March 18, 2026) (Docket No. 166921); slip op at 11.  Dispositional rulings are reviewed for an abuse of discretion. *Id*. at ___; slip op at 11.[2]

## III.  LEGAL BACKGROUND

A person is liable for their debts.  Historically, courts have recognized that this is as true in death as it is in life.  In his commentaries nearly 250 years ago, William Blackstone declared that "it is [an estate's] business first of all to see whether there is a sufficient fund left to pay the debts of the testator; the rule of equity being, that a man must be just before he is permitted to be generous."  Sprague, Blackstone's Commentaries, Abridged (9th ed), p 283.[3]  Our Court has long recognized this rule.  See *Lafferty v People's Savings Bank*, 76

It is no longer necessary to address these questions to dispose of this case, so we decline to do so.

[2] See also *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008); *In re Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007).  A trial court abuses its discretion where its decision falls outside the range of reasonable and principled outcomes.  See *Butka*, 514 Mich at 376.

[3] See also Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harvard L Rev 1108, 1117 (1984); cf. Note, *Public Policy and the Probate Pariah: Confusion in the Law of Will Substitutes*, 48 Drake L Rev 769, 771 (2000) ("It is generally recognized that the underlying purpose of administering a decedent's estate is to collect the assets, pay those who have claims against the decedent and the assets, and transmit possession with unencumbered title to the next owner as quickly and as inexpensively as possible.") (quotation marks and citation omitted).

Mich 35, 51-52; 43 NW 34 (1889) ("Upon the death of a person leaving creditors, the debts, previously personal obligations, become immediately property obligations, with all the force of a lien upon the debtor's estate.").

More recently, however, the law has employed different mechanisms for disposing of a deceased person's property, some of which shield assets from creditor claims. The American estate plan has come to include will substitutes—the relevant ones here being revocable trusts,[4] life insurance policies, and retirement accounts, all of which allow the owner to designate a beneficiary. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harvard L Rev 1108, 1109-1113 (1984). Predominately, this case is about trusts. In the United States, some have characterized a revocable trust as "functionally indistinguishable from a will." *Id*. at 1109. But trusts are employed in place of wills to avoid the costs and time-consuming procedures of administration in the probate court. Newman, *Revocable Trusts and the Law of Wills: An Imperfect Fit*, 43 Real Prop Trust & Estate LJ 523, 524 (2008).

In 1998, the Legislature enacted the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. 1998 PA 386. EPIC was largely the work of the Probate and Estate Planning Section of our state bar, which sought to modernize Michigan law as it relates to

---

[4] Under the Michigan Trust Code, MCL 700.7101 *et seq*., our Legislature has said that a trust is "revocable" when it is "revocable by the settlor without the consent of the trustee or a person holding an adverse interest." MCL 700.7103(h). See also *Black's Law Dictionary* (12th ed), p 1829 (defining "revocable trust" as "[a] trust in which the settlor reserves the right to terminate the trust and recover the trust property and any undistributed income"). In contrast, "irrevocable trust" is defined in Michigan's Powers of Appointment Act, MCL 556.111 *et seq*., as "a trust over which no person holds a power of revocation." MCL 556.112(p). See also *Black's Law Dictionary* (12th ed), p 1827 (defining "irrevocable trust" as "[a] trust that cannot be terminated by the settlor once it is created.").

6

trusts and estates. Martin, Estates and Protected Individuals Code with Reporter's Commentary (ICLE, 2008 ed), p xi. EPIC is a compilation of provisions from the former Revised Probate Code, codifications of Michigan common law, and new provisions meant to aid in the probate process and trust administration. See generally *id*. In enacting EPIC, the Legislature adopted the current MCL 700.7605 (former MCL 700.7501), which was an "entirely new" addition to Michigan's law of trusts. *Id*. at 375; see also *id*. at 405 ("All of Part 5 represents an addition to Michigan estate settlement procedures.").

Relevant here, MCL 700.7605(1)(b) provides that "[t]he property of a trust over which the settlor has the right . . . , at his or her death, . . . to revoke the trust and revest principal in himself or herself is subject to" claims of the settlor's creditors "to the extent that the settlor's property subject to probate administration is insufficient to satisfy" the claims.[5] The statute also enumerates which property of a trust revocable at the settlor's death is exempt from creditor claims. Those exemptions include trusts established as part of certain retirement accounts, all payments therefrom, and certain other property received by the trust. See MCL 700.7605(2) and (4). EPIC went into effect on April 1, 2000, MCL 700.8101(1), repealing, among other statutes, the Revised Probate Code, 1978 PA 642, and the Uniform Testamentary Additions to Trusts Act, 1962 PA 83, MCL 700.8102.

While Michigan was working to adopt EPIC, the Uniform Law Commission was also developing the Uniform Trust Code (UTC). See English, *The Uniform Trust Code (2000): Significant Provisions and Policy Issues*, 67 Mo L Rev 143, 144 (2002). The

---

[5] " 'Settlor' means a person, including a testator or a trustee, who creates a trust." MCL 700.7103(i).

7

Uniform Law Commission approved its final language in 2000, and the American Bar Association voted to approve it in 2001. *Id.* Relevant here, UTC, § 505(a)(3) provides:

> Whether or not the terms of a trust contain a spendthrift provision, the following rules apply:

> * * *

> (3) After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate, the expenses of the settlor's funeral and disposal of remains, and [statutory allowances] to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and [allowances]. [Brackets in original.]

The American Bar Association adopted this provision in recognition of the revocable trust's frequent application as a will substitute. UTC, § 505, comment, p 91. "As such, the trust assets, following the death of the settlor, should be subject to the settlor's debts and other charges." *Id.*

The Legislature took this into account in 2009 when, based on the work of the Michigan Trust Code Committee of the Probate and Estate Planning Section of the State Bar of Michigan, it enacted the Michigan Trust Code, MCL 700.7101 *et seq.*, within EPIC. See Harder, *Introducing the Michigan Trust Code*, 89 Mich BJ 24, 24 (May 2010). The Trust Code was enacted to "make more comprehensive and to clarify the law governing trusts," to "permit the continued expansion and development of trust practices," and to "foster certainty in the law so that settlors of trusts will have confidence that their instructions will be carried out as expressed in the terms of the trust." MCL 700.8201(2). The Trust Code incorporated the UTC into existing Michigan trust law "to preserve long-

8

established procedures, practices, and principles concerning trusts . . . while also filling the numerous gaps that have existed." *Introducing the Michigan Trust Cod*e, 89 Mich BJ at 24.

In particular, the Trust Code codified most of UTC, § 505 in MCL 700.7506(1). Martin & Harder, *Estates and Protected Individuals Code with Reporters' Commentary* (ICLE, March 2025 update), § 700.7506, p 664. In adopting UTC, § 505, the Legislature placed Michigan among the states that "align[] the treatment of wills and revocable trusts." *Estates and Protected Individuals Code with Reporters' Commentary* (March 2025 update), Part 6, Revocable Trusts, p 668. As one secondary source has explained, "Because revocable trusts are, to a significant extent, the functional equivalent of wills, the trend in both statutory law and case law is to subject such trusts, and persons interested in them, to the same law that would apply if the settlor instead used a will to provide for the disposition of her property at her death." *Revocable Trusts and the Law of Wills: An Imperfect Fit*, 43 Real Prop Trust & Estate LJ at 524-525.

In adopting MCL 700.7506(1), the Legislature provided distinct provisions for revocable and irrevocable trusts concerning the reach of creditors.[6]   See MCL

---

[6] This distinction recognizes the differing purposes of revocable and irrevocable trusts. As noted above, a revocable trust is most commonly used as a will substitute to control the disposition of property after the death of the settlor without the involvement of the probate courts. *Revocable Trusts and the Law of Wills: An Imperfect Fit*, 43 Real Prop Trust & Estate LJ at 524. Because the settlor of an irrevocable trust cannot retake possession of the property placed in trust, these are generally used where it is "desirable to separate an individual from his or her assets" as a liability shield; for tax avoidance, government-benefit planning, or transitioning generational wealth; or "to take care of the needs of an incompetent or financially insecure family member." Rich, Michigan Probate (November 2025 update), § 21A:1, pp 263-264. Most trusts are revocable trusts, *id*. at 263, and our courts construe a trust as revocable by default, see MCL 700.7602(1).

700.7506(1)(a) through (c). MCL 700.7506(1)(a) and (b) provide the following rules for revocable trusts:

> (a) During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.

> (b) After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that at the settlor's death was revocable by the settlor, either alone or in conjunction with another person, is subject to expenses, claims, and allowances as provided in [MCL 700.7605].

And MCL 700.7506(1)(c) provides the following rule for irrevocable trusts:

> (c) With respect to an irrevocable trust, a creditor or assignee of the settlor may reach no more than the lesser of the following:

> (*i*) The claim of the creditor or assignee.

> (*ii*) The maximum amount that can be distributed to or for the settlor's benefit exclusive of sums to pay the settlor's taxes during the settlor's lifetime.

As set forth above, MCL 700.7506(1)(b) refers to MCL 700.7605 for purposes of determining the expenses, claims, and allowances to which a revocable trust is subject following the settlor's death. MCL 700.7605(1)(b) confirms the rule concerning revocable trusts: "The property of a trust over which the settlor has the right without regard to the settlor's mental capacity, at his or her death, either alone or in conjunction with another person, to revoke the trust and revest principal in himself or herself is subject to . . . [a]n enforceable and timely presented claim of a creditor of the settlor, including a claim for the settlor's funeral and burial expenses."

10

## IV. ANALYSIS

At issue here is, first, whether the assets of Jennifer's revocable trust are subject to creditor claims under MCL 700.7506(1)(b) and MCL 700.7605(1), and second, if so, whether the 401(k) payments and life insurance proceeds are exempt from such claims under MCL 700.7605(2) or (4). These questions present issues of statutory interpretation. We interpret the words used in a statute in light of their ordinary meaning and their context within the statute, reading them harmoniously to give effect to the whole statute. *Janetsky v Saginaw Co*, ___ Mich ___, ___; ___ NW3d ___ (July 25, 2025) (Docket Nos. 166477 and 166478); slip op at 8-9. The goal of interpreting the statute is to ascertain the Legislature's intent as "may reasonably be inferred from the statutory language." *Id*. (quotation marks and citation omitted). We hold that the trust here is subject to creditor claims under MCL 700.7605(1), but the exemptions prevent Helen's estate from reaching the 401(k) and life insurance proceeds.

### A. THE STATUS OF THE TRUST UNDER THE TRUST CODE

As a preliminary matter, we address whether the 401(k) and life insurance proceeds held by the trust are subject to creditor claims as assets of a revocable trust under MCL 700.7506(1)(b) and MCL 700.7605(1). In sum, the threshold question comes down to how we should categorize a trust and its property—including assets that are payable to the trust upon the death of the settlor—where the trust was revocable by the settlor but can no longer be revoked following the settlor's death.

Under Michigan law, a single-settlor revocable trust becomes irrevocable upon the settlor's death. See, e.g., *In re Herbert Trust*, 303 Mich App 456, 457; 844 NW2d 163 (2013) ("Upon her death, the trust became irrevocable . . . ."); MCL 556.112(p) (defining

11

"irrevocable trust," as used in the Powers of Appointment Act, to mean "a trust over which no person holds a power of revocation").[7] This rule recognizes that the sole settlor of a revocable trust has the capacity to revoke only during their lifetime. Cf. *Hackley Union Nat'l Bank v Farmer*, 252 Mich 674, 681-682, 692; 234 NW 135 (1931) (holding that a letter mailed by the settlor prior to his death revoking his trust was effective despite receipt by the trustee occurring after the settlor's death). However, the text of MCL 700.7506(1)(b) and MCL 700.7605(1) does not merely focus the inquiry on the distinction between a "revocable trust" and an "irrevocable trust" after the settlor dies. See *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018) ("The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written.") (quotation marks and citation omitted).

Again, MCL 700.7506(1)(b) states, in pertinent part, "After the death of a settlor, . . . the property of a trust that at the settlor's death was revocable by the settlor . . . is subject to expenses, claims, and allowances as provided in [MCL 700.7605]." The Legislature focuses our attention on the status of the "trust . . . at the settlor's death" in determining whether a trust falls under this provision. See *id*. If the trust was a revocable trust *at that time*, the trust is a revocable trust for purposes of MCL 700.7506(1)(b). The same can be said for MCL 700.7605(1), which provides that it covers "a trust over which the settlor has the right . . . at his or her death . . . to revoke the trust and revest principal in himself or herself . . . ." Under each provision, property is subject to the claims of creditors

---

[7] See also, e.g., *In re Childress Trust*, 194 Mich App 319, 321; 486 NW2d 141 (1992) ("In 1988, upon Hugh Childress' death, the trust became irrevocable . . . ."); *In re Ferguson Estate*, 186 Mich App 409, 412; 465 NW2d 357 (1990), rev'd on other grounds 439 Mich 963 (1992).

if it is the property of such a trust, subject to exceptions as provided in MCL 700.7605(2) through (4). This framework is consistent with other portions of the Trust Code, which distinguish the treatment of instruments created as irrevocable trusts from revocable trusts and revocable trusts that have become irrevocable.[8]

The reporters' comment in *Estates and Protected Individuals Code with Reporters' Commentary* (March 2025 update) regarding MCL 700.7605 supports this interpretation. It describes the function of the statute: "If, at death, the settlor of a trust held a power of revocation over the trust, the assets of that trust (except as provided in subsections (2), (3), and (4)) are exposed to debts, expenses, and allowances." *Estates and Protected Individuals Code with Reporters' Commentary* (March 2025 update), § 700.7605, p 685. Nowhere does the comment discuss a requirement that the proceeds have been distributed to the trust prior to the settlor's death. Nor does it mention the transformation of a trust from a revocable trust to an irrevocable trust.

This interpretation also aligns with the background law of probate and the use of revocable trusts as will substitutes. The Legislature, in recognition of the role revocable trusts play, has chosen to largely align the treatment of wills with the treatment of revocable

---

[8] For instance, the Trust Code explicitly requires a trustee to notify beneficiaries when "the trustee acquires knowledge of the creation of an irrevocable trust, or [when] the trustee acquires knowledge that a formerly revocable trust has become irrevocable, whether by the death of the settlor or otherwise[.]" MCL 700.7814(2)(c). It provides statutes of limitations for challenging the validity of the trust applicable only to "a trust that was revocable at the settlor's death." MCL 700.7604(1); see also MCL 700.7604(2) and (3). And it provides parallel methods to modify the terms of a trust—one of which applies to all trusts and another which applies only to irrevocable trusts—something that would be unnecessary if revocable trusts became statutory irrevocable trusts upon the death of the settlor. See MCL 700.7411 (irrevocable trusts); MCL 700.7412.

13

trusts, see *Estates and Protected Individuals Code with Reporters' Commentary* (March 2025 update), Part 6, Revocable Trusts, p 668, as is the modern trend, *Revocable Trusts and the Law of Wills: An Imperfect Fit*, 43 Real Prop Trust & Estate LJ at 524-525. And, as discussed above, the background rule is that estates are liable for the debts and claims against the decedent. 13 Michigan Pleading & Practice (2d ed), § 103:1, p 269. This includes damages caused by the decedent's wrongful acts committed during their life, even where the suit was filed after their death. See *In re Curzenski Estate*, 384 Mich 334, 337-338; 183 NW2d 220 (1971), overruled on other grounds by *Williams v Grossman*, 409 Mich 67 (1980).[9] The alignment of the Trust Code with the law of wills and probate estates can be seen by comparing MCL 700.7605(1) to the statute that prioritizes claims against an estate; both provide for liability as to the costs of administering the estate, debts of the decedent, and homestead and family allowances provided in EPIC. Compare MCL 700.7605(1)(a) through (c) with MCL 700.3805(1)(a) through (i).

Many sister jurisdictions appear to understand that their analogous statutes function consistently with our reading of Michigan's statutes, either implicitly, see, e.g., *In re King Estate*, 228 Ariz 565, 568-569; 269 P3d 1189 (App, 2012); *In re Stidham Estate*, 438 SW3d 535, 541 (Tenn App, 2012), or explicitly, see, e.g., *Livesay v Carolina First Bank*, 192 NC App 234, 237-239; 665 SE2d 158 (2008); *Commerce Bank, NA v Bolander*, 44 Kan App 2d 1, 11-14; 239 P3d 83 (2007).[10]

---

[9] See also MCL 700.3803(1) and (2) (establishing statutory periods of limitations for claims arising before, at, or after the decedent's death).

[10] Such jurisdictions are generally among the numerous states that have adopted some form of UTC, § 505, which is the equivalent of our MCL 700.7506(1). See, e.g., Ala Code 19-3B-505(a)(3); Haw Rev Stat 554D-505(a)(3); Md Code, Estates & Trusts, 14.5-508(a)(5);

To be sure, other jurisdictions have taken a different approach in defining which trust assets are subject to creditors' claims under statutes analogous to MCL 700.7506(1)(b) and MCL 700.7605(1). But in doing so, they have adopted explicit language to that effect. For example, the California Probate Code allows creditors to reach "the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death[.]" Cal Probate Code 19001(a).[11] Though we also note that Oregon's analogous statute is written more clearly in the other direction than our own. See Or Rev Stat 130.315(1)(c) ("If a trust was revocable at the settlor's death, the property of the trust becomes subject to creditors' claims as provided in ORS 130.350 to 130.450 when the settlor dies.").

In sum, the text of the statutes, relevant commentary, and underlying law show that the Legislature's purpose in enacting MCL 700.7506(1)(b) and MCL 700.7605(1) was to codify the liability of a revocable trust used as a will substitute for the debts of the deceased settlor. Accordingly, the text of the statutes relies on the trust's status as a "revocable trust"

---

Mass Gen Laws, ch 203E, § 505(a)(3); Fla Stat 733.707(3); Kan Stat Ann 58a-505(a)(3); NC Gen Stat 36C-5-505(a)(3).

[11] See also, e.g., Wyo Stat Ann 4-10-506(d) ("After the death of a settlor, . . . the portion of a trust that was revocable at the settlor's death, *and the property subject thereto*, is subject to claims of the settlor's creditors . . . to the extent the settlor's probate estate is inadequate to satisfy those claims . . . .") (emphasis added); SC Code Ann 62-7-505(a)(3) ("After the death of a settlor, . . . *the property held in a revocable trust at the time of the settlor's death* is subject to claims of the settlor's creditors . . . .") (emphasis added); Utah Code Ann 75B-2-505(3) ("After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death, *but not property received by the trust as a result of the death of the settlor which is otherwise exempt from the claims of the settlor's creditors*, is subject to claims of the settlor's creditors . . . .") (emphasis added).

15

at the time of the decedent's death rather than at any other point in time. To hold otherwise would require us to read additional words into each statute, which we are not permitted to do. See *McQueer*, 502 Mich at 286 (" '[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.' "), quoting *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).[12] Here, the parties agree that this trust was revocable by the decedent up to her death—as was provided in the trust documents. All the property held or proceeds received by the decedent's trust are subject to creditor claims that cannot be satisfied by her estate subject to the exceptions stated in MCL 700.7605(2) through (4).

## B. APPLICATION OF THE EXEMPTIONS

Though we conclude that MCL 700.7506(1)(b) and MCL 700.7605(1) reflect the historical rule that a deceased is still liable for their debts, that alone does not determine

---

[12] We acknowledge that two courts have employed analyses that vary from our own in unpublished decisions predating our own. See *United States v Chicorel Estate*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued January 17, 2017 (Case No. 16-10894); *In re Markoul Living Trust*, unpublished per curiam opinion of the Court of Appeals, issued January 29, 2015 (Docket No. 316892). These decisions are merely persuasive authority before this Court. See *Stine v Continental Cas Co*, 419 Mich 89, 95 n 2; 349 NW2d 127 (1984) (regarding unpublished opinions); *Continental Motors Corp v Muskegon Twp*, 365 Mich 191, 194; 112 NW2d 429 (1961) (regarding federal courts' interpretations of state law). But neither decision grapples with the issues before us such that we can follow their underdeveloped reasoning with clarity or confidence; each is bereft of meaningful reasoning. The *Chicorel* court stated that MCL 700.7506(1) and MCL 700.7605(1) did not apply to property held outside the trust at the time of death, but it also cited MCL 700.7605(4), suggesting that the court considered the trust reachable by creditors under MCL 700.7605(1) but for the Subsection (4) exemption. *Chicorel Estate*, unpub op at 2-3. And an annotation concerning *Markoul* in *Estates and Protected Individuals Code with Reporters' Commentary* (March 2025 update) described the *Markoul* Court's "interpretation of the trust and statute" as "highly questionable" and as "a flagrant error." *Id*. at 687.

16

whether Helen's estate can reach the 401(k) and life insurance proceeds to be paid to Jennifer's trust. The Legislature, in adopting MCL 700.7605, included two relevant exceptions to the general rule of Subsection (1).[13] See MCL 700.7605(2) and (4). So we must consider whether these exemptions place the 401(k) and life insurance proceeds outside the reach of Helen's estate as a judgment creditor. These exemptions provide:

> (2) A trust established as part of, and all payments from, an employee annuity described in section 403 of the internal revenue code, 26 USC 403, an individual retirement account described in section 408 of the internal revenue code, 26 USC 408, a Keogh, or HR-10, plan, or a retirement or other plan that is qualified under section 401 of the internal revenue code, 26 USC 401, shall not be considered to be a trust described in subsection (1).

> * * *

> (4) For purposes of this section, property held or received by a trust to the extent that the property would not have been subject to a claim against the settlor's estate if it had been paid directly to a trust created under the settlor's will or other than to the settlor's estate, or property received from a trust other than a trust described in this section, shall not be considered trust property available for the payment of the administration expenses, a claim against the settlor's estate, or an allowance described in subsection (1). [MCL 700.7605(2) and (4).]

### 1. MCL 700.7605(2) APPLIES TO THE 401(k) PROCEEDS

First, we consider whether MCL 700.7605(2) places the proceeds from Jennifer's 401(k) plan held in Jennifer's trust outside the reach of creditors. The pertinent portion of the statute reads: "A trust established as part of, and all payments from, . . . a retirement or other plan that is qualified under section 401 of the internal revenue code, 26 USC 401, shall not be considered to be a trust described in subsection (1)." MCL 700.7605(2). The

---

[13] There is a third statutory exception relating to qualified domestic relations orders, MCL 700.7605(3), that is not relevant in this case.

reference to "[a] trust established as part of" a 401(k) plan in the statute refers to the operation of 401(k) plans under the federal Internal Revenue Code. See 26 USC 401. This provision applies to qualified "stock bonus, pension, and profit-sharing" plans. 26 USC 401(a). To qualify under 26 USC 401, such a plan must include "[a] trust created or organized . . . [as] part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries" where the contributions are held in trust for the employees' benefit. 26 USC 401(a). This is the arrangement described in the DTE Electric Company Savings & Stock Ownership Plan Jennifer participated in; all contributions under the plan are "deposited in the Trust Fund" and are "retained for the exclusive benefit of Members and Beneficiaries [and] used to pay for benefits under the Plan or to pay administrative expenses . . . ."

The parties agree that the Jennifer L. Fowler Trust is not "a trust established" under 26 USC 401; it is a Michigan revocable trust Jennifer established to serve as, essentially, a will substitute. Rather, the Stock Ownership Plan itself is "[a] trust established as part of" a 401(k) plan within the meaning of MCL 700.7605(2). The parties also agree that the funds in the 401(k) account must now be disbursed to Jennifer's designated beneficiary, the Jennifer L. Fowler Trust, now that she is deceased. The proceeds of the 401(k) plan, upon receipt by Jennifer's trust, cannot be "[a] trust established as part of" a 401(k) plan that is beyond the reach of creditors under MCL 700.7605(2).

However, we must still determine whether the proceeds are described under the portion of MCL 700.7605(2) concerning "all payments from" a 401(k) plan. Specifically, that portion of the statute provides that "all payments from . . . [a 401(k) plan] . . . shall not be considered to be a trust described in subsection (1)." MCL 700.7605(2). The

18

disbursement of funds in the 401(k) plan is a "payment from" a 401(k) plan. *Black's Law Dictionary* (12th ed) includes three applicable definitions of "payment":

> 1. Performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation.

> 2. The money or other valuable thing so delivered in satisfaction of an obligation.

> \* \* \*

> 3. A disbursement of money. [Formatting modified.]

The disbursement of these funds qualifies under any definition as it is a "disbursement" or "delivery" of money that the 401(k) plan is obligated to disburse or deliver under Article 8 of the Stock Ownership Plan based on Jennifer's designation of her trust as the beneficiary.

Next, we consider the impact of the phrase "shall not be considered to be a trust described in subsection (1)." See MCL 700.7605(2). Read as applied to "[a] trust established as part of" a 401(k) plan, the meaning is clear: The 401(k) plan trust is not a trust that creditors can reach under MCL 700.7605(1). The meaning gets more muddled as applied to "all payments from" a 401(k) plan, however. Read literally, it states that disbursed monies are not a trust. But a payment of monies cannot be a trust unless the payment is made with "an intention to create [a] trust" and, subject to certain exceptions, "a definite beneficiary." See MCL 700.7402(1)(b) and (c).

Rather, we must read the phrase "shall not be considered to be a trust described in subsection (1)" in context and as part of the whole statute—particularly given its reference to MCL 700.7605(1). See *Janetsky*, ___ Mich at ___; slip op at 8 ("We interpret the words in the statute in light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole.") (quotation marks and citations

19

omitted).[14]  As explained in more detail above, MCL 700.7605(1) describes the type of trust subject to creditor and other claims as a trust over which the settlor held the power to revoke during her lifetime.  Reading Subsections (1) and (2) together, the intent of the Legislature is to treat "all payments from" a 401(k) plan as not part of a revocable trust liable for creditor and other claims.[15]  A contrary reading would also require us to interpret MCL 700.7605(2) without giving effect to the text addressing "all payments from" a retirement account, which we cannot do.  See *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 508-509; 968 NW2d 482 (2021) ("Courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.

---

[14] Cf. *Alan v Wayne Co*, 388 Mich 210, 274; 200 NW2d 628 (1972) (explaining that a statute explicitly referring to another statute incorporates the referenced statute in total).

[15] This is in accord with how Congress and the Legislature treat retirement accounts during the holder's life.  See MCL 600.6023(1)(j) and (k) (exempting retirement accounts from execution by judgment creditors); *Patterson v Shumate*, 504 US 753, 757-760; 112 S Ct 2242; 119 L Ed 2d 519 (1992) (holding that retirement plans qualified under the Employee Retirement Income Security Act are not reachable by creditors in bankruptcy).  It also follows from the growing recognition of retirement accounts with beneficiary designations as will substitutes for working people, see *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harvard L Rev at 1111 (noting the increasing use of such accounts by working Americans); Sterk & Leslie, *Accidental Inheritance: Retirement Accounts and the Hidden Law of Succession*, 89 NYU L Rev 165, 167-168 (2014).  See also MCL 38.1683 (exempting public employee retirement accounts from execution, garnishment, attachment, or bankruptcy).  Other states' lower courts have taken this approach, see, e.g., *In re Gallet*, 196 Misc 2d 303; 765 NYS2d 157 (2003); *Davis Estate*, 171 Cal App 3d 854; 217 Cal Rptr 734 (1985), and some secondary sources suggest it is the right one, see, e.g., Leslie & Sterk, *Revisiting the Revolution: Reintegrating the Wealth Transmission System*, 56 BC L Rev 61, 105-106 (2015) (suggesting that federal law may prohibit redirecting retirement account proceeds from a listed beneficiary to creditors); *Accidental Inheritance: Retirement Accounts and the Hidden Law of Succession*, 89 NYU L Rev at 218 (suggesting that one can avoid creditors by not naming their estate as the beneficiary of a retirement account).

A statute is rendered nugatory when an interpretation fails to give it meaning or effect.") (quotation marks, citations, and brackets omitted).

Because MCL 700.7605(2)'s exemption from Subsection (1) declares that "all payments from" a 401(k) plan "shall not be considered to be a trust described in subsection (1)," the Legislature exempted such payments from the claims of creditors of a deceased settlor. The disbursement from Jennifer's 401(k) plan to her revocable trust is necessarily one of those payments exempt from creditor claims. Accordingly, Helen's estate cannot reach these funds to satisfy the judgment against Jennifer's estate.

2. MCL 700.7605(4) APPLIES TO THE LIFE INSURANCE PROCEEDS

MCL 700.7605(4) mandates that certain "property . . . shall not be considered trust property available for the payment of . . . a claim against the settlor's estate" under MCL 700.7605(1). It describes three categories of property under this exception: (1) property "held or received by a trust" that "would not have been subject to a claim against the settlor's estate if it had been paid directly to a trust created under the settlor's will," (2) property "held or received by a trust" that would not have been subject to such claims "if it had been paid . . . other than to the settlor's estate," and (3) "property received from a trust other than a trust described in this section[.]" MCL 700.7605(4). The term "estate" as used in EPIC "includes the property of the decedent, trust, or other person whose affairs are subject to [EPIC] as the property is originally constituted and as it exists throughout administration." MCL 700.1104(b).[16]

---

[16] This definition applies to the term "estate" as used in the Trust Code because the Trust Code was enacted within EPIC. See MCL 700.1102 ("The definitions contained in this part apply throughout this act unless the context requires otherwise or unless a term defined elsewhere in this act is applicable to a specific article, part, or section."). We are bound to

Here, Jennifer's trust was the named beneficiary of the life insurance policy. Jennifer's trust relies upon MCL 500.2207(2) to argue that the life insurance proceeds are beyond the reach of creditors under certain conditions. That provision, which is part of the Insurance Code, provides in pertinent part:

> If a policy of insurance . . . is effected by any person on his own life or on another life in favor of a person other than himself, or (except in cases of transfer with intent to defraud creditors) if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof (other than the insured . . . or his executors or administrators) shall be entitled to the proceeds . . . against the creditors and representatives of the insured . . . : Provided, That, subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy . . . . [MCL 500.2207(2).]

In sum: A person may insure their own life and designate a beneficiary of the life insurance policy, which entitles the beneficiary to the proceeds despite the claims of any creditors unless (1) the beneficiary is the insured or the insured's executor or administrator or (2) the life insurance premiums were paid with the intent to defraud creditors. See *id*.[17]

Jennifer's trust argues that the proceeds of the life insurance policy are beyond the reach of creditors because they would not have been subject to such claims if paid "other than to the settlor's estate." See MCL 700.7605(4). Jennifer's trust points to MCL 700.7605(4) as exempting the life insurance proceeds because the proceeds were not left to Jennifer's estate (i.e., to herself or her "executors or administrators"), making them

---

follow such applicable statutory definitions as are enacted by the Legislature. *Janetsky*, ___ Mich at ___; slip op at 8-9.

[17] See also *In re Parsons*, 161 BR 194, 196 (Bankr WD Mich, 1993) ("In the insurance context, the policy of this statute is to protect the beneficiary against creditors of the insured and the policy holder where the beneficiary is neither the insured nor the policy holder.").

otherwise exempt under MCL 500.2207(2). Helen's estate disagrees. It argues that the exemption in MCL 500.2207(2) does not shield life insurance proceeds from creditors' reach because MCL 500.2207(2) does not apply to proceeds paid to the insured's "administrator[]." Because a trust is administered, Helen's estate argues, the trustee of a trust is necessarily an administrator within the meaning of this provision. Resolution of this question, therefore, will focus on the meaning of the term "administrator" for the purposes of Michigan's law of trusts and estates.

As a preliminary matter, from the surrounding text of the statute, the carveout for policies payable to "the insured . . . or his executors or administrators" uses the term "administrator[]" in the context of one's representative after death. See MCL 500.2207(2). It is in the company of references to "the insured," which "typically refers to the person whose death triggers the obligation of the insurer to pay . . . ." See 3 Couch, Insurance, 3d (2011 rev ed), § 40:1, p 40-3.

An "executor" is "[a] person named by a testator to carry out the provisions in the testator's will." *Black's Law Dictionary* (12th ed). In the law of trusts and estates, the term "administrator" is typically defined as "[a] person appointed by the court to manage the assets and liabilities of an intestate decedent." *Id*. And in the insurance industry, a policy payable to an insured's "executors and[/or] administrators" is understood as requiring any proceeds of a policy to be paid "to a named person described as the execut[or]

23

of the will of the insured" to be "held by the execut[or] in that capacity" and not used for their own benefit. 4 Couch, Insurance, 3d, § 59.21 (2011 rev ed), p 59-38.[18]

In this way, the phrase "executors or administrators" as used in MCL 500.2207(2) refers to a testate or intestate estate of the insured. While MCL 500.2207(2) uses the language "executors or administrators," for purposes of EPIC, the Legislature has supplanted the terms "executor[]" and "administrator[]" with unified use of the term "personal representative." See MCL 700.1106(p) (" 'Personal representative' includes, but is not limited to, an executor, administrator, . . . and any other person, other than a trustee of a trust subject to [the Trust Code], who performs substantially the same function under the law governing that person's status."). The term encompasses all those performing the same function as an executor or administrator "other than a trustee of a trust." *Id*.

This use of the term "administrator" appears consistent with the historical use of the term "administrator" to refer to one appointed to manage an intestate estate. Michigan caselaw is replete with use of the term "administrator" consistent with this understanding. See, e.g., *In re Critchell Estate*, 361 Mich 432; 105 NW2d 417 (1960); *In re Ward Estate*, 342 Mich 172; 69 NW2d 187 (1955); *In re Koebke's Petition*, 339 Mich 565; 64 NW2d 913 (1954); *In re Svitojus' Estate*, 296 Mich 19; 295 NW 543 (1941); *In re Winter's Estate*, 297 Mich 294; 297 NW 497 (1941). One such opinion was issued by our Court of Appeals, applying the former Probate Code of 1939, as late as 1982. See *In re Brack Estate*, 121 Mich App 585, 590; 329 NW2d 432 (1982) ("It is the duty of an administrator of an estate

---

[18] Though it is also noted that an executor or administrator may be eligible to inherit the proceeds of the policy outside of their official capacity as executor or administrator. See 4 Couch, § 59.21, p 59-38.

24

to keep property insured and maintained and to protect the estate from unlawful demands."). MCL 500.2207 has not been amended since its enactment in 1956, which helps explain the statute's use of the antiquated terms "executors" and "administrators." See 1956 PA 218.[19]

To be sure, the Trust Code does refer to the process of holding, investing, and paying trust property under the terms of the trust as "administration." See, e.g., MCL 700.7801 ("Upon acceptance of a trusteeship, *the trustee shall administer the trust* in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with this article.") (emphasis added).[20] But Helen's estate nowhere points to any use of the term "administrator" as synonymous with the term "trustee." Our Trust Code states that "the trustee shall *administer* the trust . . . ." *Id.* (emphasis added). We disagree with the probate court and the Court of Appeals in

---

[19] The same can be seen in MCL 600.2041, which uses the terms "executor," "administrator," and "trustee" in parallel and has not been amended since its enactment in 1961. See MCL 600.2041, as enacted by 1961 PA 236 ("Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action was brought[.]").

[20] See also, e.g., MCL 700.7108(2) ("A trustee is under a continuing duty to administer the trust at a place appropriate to its purposes, its administration, and the interests of the qualified trust beneficiaries."); MCL 700.7409a(1)(a)(*ii*) ("The trustee may administer the trust in accordance with the settlor's expressed intent regarding nondisclosure of primary disclosure information . . . ."); MCL 700.7901(2)(e) (allowing a court to "[a]ppoint a special fiduciary to . . . administer the trust" to remedy a breach of trust).

25

concluding that a trustee is "akin to an executor or administrator."  A trustee, therefore, is not excluded as a protected beneficiary under MCL 500.2207(2).[21]

We conclude that MCL 500.2207(2) places life insurance proceeds outside the reach of the insured-decedent's creditors unless the proceeds are paid to their estate (i.e., to "the insured" or their "executors or administrators").[22]  This falls within MCL 700.7605(4)'s exemption for trust proceeds that would be outside the reach of creditors if "paid . . . other than to the settlor's estate."[23]  Both subsections stand as exceptions to the traditional rule that a person's assets are to be made payable to creditors upon their death to satisfy any outstanding debts.[24]  Therefore, Helen's estate cannot reach the proceeds of Jennifer's life

---

[21] While we clarify that a person does not fit within the exception to MCL 500.2207(2) for an executor or administrator solely because they are a trustee, no party has raised whether a different analysis applies where that person is also the executor or administrator of the estate.

[22] This is in apparent recognition of the traditional rule that a person's estate should be liable for their debts in death—as discussed above.  See Sprague, p 283; *Lafferty*, 76 Mich at 52.

[23] For example, the life insurance proceeds would be exempt if Jennifer directly named the individuals—those named as trust beneficiaries in this case—as beneficiaries of the life insurance policy rather than naming her trust or her estate as the beneficiary.

[24] The exemption of life insurance proceeds from creditor claims against a deceased insured is not unique to Michigan.  "Life insurance proceeds to a named beneficiary have generally been protected by statute from the reach of creditors."  *Public Policy and the Probate Pariah: Confusion in the Law of Will Substitutes*, 48 Drake L Rev at 786.  Legal commentators have observed that life insurance proceeds are "[t]he only significant assets of the estates of most people," making the life insurance policy "a much more important 'testament' than the will."  *Id*. at 787 (quotation marks and citation and omitted); see also *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harvard L Rev at 1110-1111.

26

insurance policy as judgment creditor against Jennifer's estate despite payment of the proceeds into Jennifer's trust.

## V. CONCLUSION

Through MCL 700.7605, the Legislature codified as applicable to trusts the common-law rule that a decedent is still responsible for their debts. It wrote MCL 700.7605(1) to ensure that a trust the settlor could have revoked in their lifetime is liable to a deceased's creditors where the probate estate is insufficient. Notably, the Legislature also codified exemptions to this general rule in MCL 700.7605(2) and MCL 700.7605(4).

Here, we hold that the 401(k) and life insurance proceeds are beyond the reach of creditors through MCL 700.7605(1) due to these exemptions. The 401(k) proceeds are exempt as a "payment[] from" a qualifying retirement plan under MCL 700.7605(2). And the life insurance proceeds are exempt under MCL 700.7605(4) because the proceeds would not have been subject to creditor claims if paid "other than to the settlor's estate." For these reasons, we reverse the judgment of the Court of Appeals and remand to the probate court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Kimberly A. Thomas
Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Noah P. Hood

27